**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

WILDEARTH GUARDIANS
312 Montezuma Ave.
Santa Fe, NM 87501

       Plaintiff,

v.

KEN SALAZAR, in his official capacity as
Secretary, U.S. Department of the Interior,
1849 C Street, NW
Washington, DC 20240,

and

BOB ABBEY, in his official capacity as Director,
Bureau of Land Management,
1849 C Street NW, Rm. 5665
Washington DC 20240,

       Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

---

## <u>INTRODUCTION</u>

1.      The Powder River Basin in northeastern Wyoming and southeastern Montana is the single largest source of coal in the United States.  In 2008, 42 percent of all coal produced in the United States came from the Powder River Basin.  This record level of coal production led to the release of nearly a billion tons of carbon dioxide which accounted for 13 percent of all carbon dioxide emissions.

2.      Amazingly, however, Defendants Secretary of Interior Ken Salazar and Director

of the Bureau of Land Management (BLM) Bob Abbey have failed to certify the Powder River

Basis as a "Coal Production Region" under their own regulations for the sale of coal from federal

lands.

3.      Thus, because the Powder River Basin is currently not certificated as a Coal

Production Region, the BLM can avoid using its competitive leasing system.  Rather, the BLM

can and does use the "Lease by Application" process, which is really only meant for "where an

emergency need for unleased coal deposits is demonstrated, or in areas outside coal production

regions[.]" 43 C.F.R. 3425.0-2.  This has severely diminished competition for the sale of this

coal.  For example, in the last 20 years, the BLM has offered 21 "Leases by Application" for sale

in the Powder River Basin totaling nearly 50,000 acres and more than 5.8 billion tons of coal.

During this time, there have been only three sales where more than one company has bid on a

coal lease.  The reason is that the "Lease by Application" process has allowed each major coal

company operating in the region to submit applications for federal coal leases based on tracts

that they have designed.  In all but one case, it appears that mine companies have designed tracts

to facilitate expansion of their existing mines and preclude competition, thereby reducing the

price of coal and undermining the BLM's ability to ensure recovery of fair market value for the

American people.

4.      Furthermore, because the BLM fails to currently classify the Power River Basin

as a Coal Producing Region despite the fact that it produces approximately 40% of the nation's

coal, BLM continues to issue new coal leases for the area without analyzing the regional

environmental impacts—particularly climate change impacts—of increased carbon dioxide

emissions ultimately resulting from coal leasing.  The current leasing process for coal in the

Powder River Basin only requires BLM to analyze the environmental impacts of leasing on a

parcel-by-parcel basis, and does not require that BLM consider regional-level environmental impacts of leasing.  This process effectively hampers BLM from limiting coal leasing in the region based on environmental considerations.

5.      In light of the above, WildEarth Guardians ("Guardians") petitioned Ken Salazar, U.S. Secretary of the Interior ("the Secretary"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 553(e), to recertify the Powder River Basin as a "Coal Production Region" under the Federal Coal Leasing Regulations so that leasing in the region would be governed by the competitive leasing process.  Once recertified, the process requires comprehensive analysis and consideration of the regional environmental impacts of coal leasing, consultation with the public, the development of a regional leasing plan, and a competitive bidding process for the sale of federal government-owned coal.

6.      The Secretary has not responded to Guardians' Petition.  Meanwhile, BLM has proposed 12 new coal leases in the Powder River Basin that would collectively mine up to 5.8 billion tons of coal—as much coal as has been mined form the region in the last 20 years—and could lead to the release of more than 10.6 billion tons of carbon dioxide.  Thus, Plaintiff WildEarth Guardians is forced to file this lawsuit against Defendant Ken Salazar, in his official capacity as U.S. Secretary of the Interior, and Defendant Bob Abbey, in his official capacity as Director of the BLM, to prompt a response to its Petition.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action to compel agency action unreasonably delayed pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(a)(2) (civil action against the United States), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).  The relief

Guardians requests is authorized by 28 U.S.C. §§ 2201(a) (declaratory relief) and 2202 (injunctive relief).

8.      Both Defendants reside, in their official capacities, in the District of Columbia.  Furthermore, a substantial part of the events and omissions giving rise to the claim in this case occurred in the District of Columbia.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

9.      Plaintiff, WILDEARTH GUARDIANS, is a non-profit conservation organization with offices in Denver, Colorado and Santa Fe, New Mexico.  It brings suit on its own behalf and on behalf of its members.  WildEarth Guardians ("Guardians") protects and restores the wildlife, wild places, and wild rivers of the American West.  Towards this end, Guardians and its members work to replace fossil fuels with clean, renewable energy in order to safeguard public health, the environment, and the Earth's climate. Guardians has approximately 4,500 members, many of whom live, work and/or recreate in Wyoming and Montana.

10.     Guardians' members who live, work, recreate, and conduct other activities in the Powder River Basin and its environs are affected by poor air and water quality associated with coal leasing in the Powder River Basin, and have a substantial interest in ensuring they breathe the cleanest air possible and have the cleanest water possible.  Guardians and its members are also adversely affected by the land disturbance that comes from coal mining, which is usually done by strip mining, in the Power River Basin.  Guardians and its members are also affected by increased greenhouse gas emissions from coal leasing, and have a substantial interest in ensuring that Defendants fully addresses the climate change impacts from these increased emissions.

Guardians invested time and money in preparing the Petition and is harmed by Defendants' failure to respond to it by being denied information in Defendants' response and the procedural right to participate in the process of recertification and processes once recertification occurs. Because Defendants have not responded to Guardians' Petition, Guardians' members are exposed to excess air, water and land pollution and greenhouse gas emissions resulting from coal leasing, and other environmental impacts.  Guardians' and its members' interests have been, are being, and will continue to be irreparably harmed by Defendants' failure to act on Guardians' Petition to recertify the Powder River Basin as a coal production region, address global warming impacts of coal leasing, and require coal companies to pay carbon fees on new leases to establish a Global Warming Impact Fund.  The relief requested in this lawsuit would redress the injuries of Guardians' and its members.

11.     Defendant KEN SALAZAR is sued in his official capacity as the Secretary of the Interior ("Secretary").  The Secretary oversees the BLM, which has authority to designate coal production regions under 43 C.F.R. § 3400.5.

12.     Defendant BOB ABBEY is sued in his official capacity as the Director of the BLM.  The BLM has authority to designate coal production regions under 43 C.F.R. § 3400.5.

## LEGAL FRAMEWORK

13.     The Administrative Procedure Act ("APA") requires that each agency "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).

14.     The APA further requires that any agency shall "within a reasonable time…proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

15.     The APA further provides for judicial review, 5 U.S.C. § 702, and requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

## FACTUAL ALLEGATIONS

**A.     Federal Coal Leasing Program**

16.     Federal regulations provide for two types of coal leasing processes: Competitive Leasing and Lease by Application.

17.     Competitive Leasing applies in those areas the Secretary has designated as "Coal Production Regions."  As part of this competitive leasing process, BLM establishes regional leasing levels that include a ceiling for coal leasing, and delineates lease boundaries based on an assessment of regional environmental impacts and public input.  BLM then auctions leases to the highest bidder.

18.     The Federal Coal Leasing Regulations authorize the Secretary, through the BLM, to change Coal Production Regions, or alter their boundaries, through publication of a notice of change in the Federal Register.

19.     Lease by Application applies where there is an emergency need for unleased coal or in areas outside Coal Production Regions.  This process allows coal companies, rather than BLM, to delineate lease tracts and propose them for leasing.  Lease proposals are not based on regional leasing levels or any regional environmental impact analysis.  BLM performs an environmental analysis for each individual Lease by Application that is limited to consideration of environmental impacts of individual leases.  Lease by Application does not allow BLM to put a ceiling on coal leasing.

B.      **Coal Production and Leasing in the Powder River Basin**

20.      The Powder River Basin is located in northeastern Wyoming and southeastern Montana, and covers an area of roughly 24,000 square miles.

21.      Some of the largest deposits of subbituminous coal in the world underlie the Powder River Basin.  These large coal deposits make the Powder River Basin the single largest source of coal in the United States.

22.      The U.S. Department of Energy noted that in 2008 alone, a record 495,964,000 tons of coal were mined form the Powder River Basin comprising 42 percent of all coal produced in the United States and more than any other region of the country.  The Department of Energy also noted that in 2008, the top 10 producing coal mines in the United States were all located in the Powder River Basin.

23.      The Powder River Basin was initially designated a Coal Production Region on November 9, 1979.  On January 9, 1990, the then-Secretary decertified the Powder River Coal Production Region.  Decertification allowed BLM to lease coal in the Powder River Basin using the Lease by Application process.  The decision to recertify the Powder River Basin does not require the BLM to review extensive data or complicated scientific issues.

C.      **Environmental Impacts of Coal Leasing in the Powder River Basin**

24.      Carbon dioxide is the leading cause of climate disruption and the most emitted greenhouse gas in the United States.

25.      Coal mining releases greenhouse gases directly, including methane releases from coal seams and carbon dioxide from combustion of fuel for mining equipment.

26.      However, the most greenhouse gases are released indirectly when mined coal is burned.  The U.S. Environmental Protection Agency ("EPA") has determined that coal releases

more carbon dioxide when burned than any other fossil fuel.  Coal emits on average more than

200 pounds of carbon dioxide for every million British Thermal Units (BTUs) consumed.  This

amounts to an average of two tons of carbon dioxide for every one ton of coal burned.

Subbituminous coal, the type produced in the Powder River Basin, is one of the most commonly

burned coal types.

27.     The Department of Energy has determined that subbituminous coal from the

Powder River Basin releases between 212.7 and 213.4 pounds of carbon dioxide per million

BTUs.  This amount of carbon dioxide is higher than the U.S. average for subbituminous coal,

and higher than all but one other subbituminous coal producing state.

28.     Based on 2007 data, BLM determined that coal mining in the Powder River Basin

led to the release of 877,103,673 tons of carbon dioxide which comprised 13 percent of the U.S.

total and 40 percent of all carbon dioxide released by coal-fired power plants in the country.

This represents approximately 2.4% of global emissions of greenhouse gases.  In 2008,

Department of Energy and EPA determined that the record amount of coal mined from the

Powder River Basin that year led to the release of 907,227,268 tons of carbon dioxide.

29.     BLM has recently proposed to offer 12 new Leases by Application in the Powder

River Basin.  Collectively, these leases propose to mine as much as 5.8 billion tons of coal from

more than 37,571 acres.  BLM has determined that on the low end, the coal from these leases

would release 6.19 billion tons of carbon dioxide, but may release up to 10.6 billion tons of

carbon dioxide.  The amount of carbon dioxide from these proposed leases would be more than

was released by all fossil fuel combustion in the United States in 2007.  This amount of

greenhouse gas emissions could have catastrophic consequences for life on Earth as we know it.

**D.      Guardians' Petition**

30.     On November 23, 2009, Guardians submitted a petition pursuant to 5 U.S.C. §

553(e) and 43 C.F.R. § 14.2 to the Secretary requesting that he: (1) recertify the Powder River

Basin as a Coal Production Region, (2) address climate change impacts of coal leasing, and (3)

require coal companies to pay carbon fees for new leases to establish a global warming impact

fund.

31.     The Secretary received Guardians' Petition on November 30, 2009.

32.     Under 43 C.F.R. § 14.3, the Secretary of Interior is required to promptly consider

a rulemaking petition and to notify the petitioner "promptly" of action taken.

33.     As of the filing of this Complaint, the Secretary has not responded to Guardians'

Petition or notified Guardians' of any action taken on the Petition.


**CLAIM FOR RELIEF**
**(Violation of the Administrative Procedure Act)**

33.     Each allegation in this Complaint is incorporated herein by reference.

34.     Pursuant to 5 U.S.C. § 553(e), Guardians petitioned the Secretary to recertify the

Powder River Basin as a Coal Production Region, address global warming impacts of coal

leasing, and require coal companies to pay a carbon fee for new leases to establish a Global

Warming Impact Fund.

35.     The Secretary has a duty to conclude matters presented to him within a reasonable

time, pursuant to 5 U.S.C. §§ 555(b) and 706(1).  The Secretary further has a duty to promptly

consider rulemaking petitions in accordance with 43 C.F.R. § 14.3.

36.     The Secretary has unreasonably delayed responding to and concluding his action

on Guardians' Petition within the meaning of 5 U.S.C. §§ 555(b) and 706(1).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, WildEarth Guardians requests that this Court enter judgment providing the following relief:

      A.      A declaration that Defendants' failure to rule on Guardians' Petition constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1);

      B.      An injunction ordering Defendants to rule on Guardians' Petition by a specified date;

      C.      An order retaining jurisdiction over this matter until such time as Defendants complied with the Court's Order;

      D.      An order awarding Guardians its costs of litigation, including reasonable attorneys' fees; and

      E.      Such other and further relief as the Court deems just and proper.

                            Respectfully submitted,

                            /s/ Robert Ukeiley
                            Robert Ukeiley (DDC Bar # MD14062)
                            Law Office of Robert Ukeiley
                            435R Chestnut Street, Suite 1
                            Berea, KY 40403
                            Tel: (859) 986-5402
                            Fax: (866) 618-1017
                            rukeiley@igc.org

Of counsel:

Samantha Ruscavage-Barz (NM Bar No. 23276)
17 Orno Creek Road
Placitas, NM 87043
(505) 750-1598
Samantha.RuscavageBarz@gmail.com

Dated: June 29, 2010